Filed 2/19/15  P. v. Santiesteban CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VICTOR MANUEL SANTIESTEBAN,<br><br>    Defendant and Appellant. | G049970<br><br>(Super. Ct. No. 12CF2930)<br><br>O P I N I O N |


Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge.  Affirmed.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

We appointed counsel to represent Victor Manuel Santiesteban on appeal. Counsel filed a brief that set forth the facts of the case. Counsel did not argue against his client but advised the court no issues were found to argue on his behalf. Santiesteban was given 30 days to file written argument on his own behalf. That time has passed, and he did not file a brief.

Counsel filed a brief following the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). The court in *Wende* explained a *Wende* brief is one that sets forth a summary of the proceedings and facts but raises no specific issues. Under these circumstances, the court must conduct an independent review of the entire record. When appellant himself raises specific issues in a *Wende* proceeding, we must expressly address them in our opinion and explain why they fail. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.) Here, Santiesteban did not file a supplemental brief raising any issues.

Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), to assist the court with its independent review, counsel provided the court with information as to issues that might arguably support an appeal. Counsel raised three issues: (1) was Santiesteban's conviction supported by sufficient evidence; (2) did the information adequately notify Santiesteban of the perjury charge; and (3) is the incomplete polling of the jury reversible error.

Pursuant to California Rules of Court rule 8.256(e)(1), submission of the matter was vacated to permit briefing on the following issues: (1) whether the court erred by failing to impose a sentence on Santiesteban's perjury conviction; and (2) whether we should remand the matter for resentencing.

We have reviewed the record in accordance with our obligations under *Wende* and *Anders,* and considered the supplemental briefing. We found no arguable issues on appeal. The judgment is affirmed.

## PROCEDURAL HISTORY

A jury convicted Santiesteban of the offense of making a fraudulent statement in his workers' compensation claim in violation of Insurance Code section 1871.4, subdivision (a)(1) (count 1), and of the offense of attempted perjury under oath in violation of Penal Code sections 118, subdivision (a), 664, subdivision (a) (count 2).  At the sentencing hearing, the trial court stated, "[Y]ou will still have two felony convictions on your record now. . . . [¶] . . . [¶]  I will give you an opportunity for probation. [¶] . . . [¶] [I]mposition of the maximum sentence is suspended.  You are placed on formal supervised probation for three years under the following terms and conditions." One of the conditions was that Santiesteban serve 360 days in county jail for count 1, with 872 days pre-sentence credit, including 436 actual and 436 good-time days. Santiesteban filed a timely notice of appeal.

## FACTS

Santiesteban was employed by American City Pest and Termite (American) as a service technician until American learned he was simultaneously working for his son, also named Victor Santiesteban, at another pest-control company called Calobeto Exterminators, in violation of his agreement with American.  While employed by American, Santiesteban worked a night route from 4:00 p.m. to about 10:00 p.m. in a company-assigned vehicle.  Santiesteban's last day of work for American was October 26, 2009.

Santiesteban filed a claim for Unemployment Insurance, which was denied on December 8, 2009.  His appeal of the denial of the insurance claim was denied on or about April 7, 2010.

On January 25, 2010, Santiesteban filed a workers' compensation claim for an injury he allegedly suffered on October 1, 2009.  In the workers' compensation claim form, Santiesteban stated he had been rear-ended while in an American truck and had suffered injuries to his "trunk."  Santiesteban's workers' compensation claim ultimately

3

went to the Workers' Compensation Appeal Board where it was denied. Although no award was made to Santiesteban, investigation fees, copy service fees, and defense attorney fees were paid out.

Santiesteban was deposed in connection with his workers' compensation claim and that deposition testimony was used before the Workers' Compensation Appeal Board. Prior to testifying, Santiesteban was administered an oath. An oath was also administered to the interpreter who was assisting him. At the deposition, Santiesteban testified he had suffered injuries in an accident in October 2009 while driving his assigned American truck northbound on the 110 Freeway toward the 101 Freeway after fumigating a restaurant on Figueroa Street. Santiesteban did not remember the precise date of the accident. He remembered the accident occurred at night, but did not remember the exact time.

Santiesteban described the circumstances of the accident in great detail. He indicated the accident occurred on the 110 Freeway northbound intending to take the 101 Freeway to Santa Monica. When his truck was struck, he pulled to the side of the road. Five other vehicles were involved in the collision. Based on what other drivers told him, he believed the driver of a black Chevrolet Blazer caused the accident. He obtained insurance information from that driver, but he "hardly remembered anything" about the vehicle that struck him because he was too nervous.

Santiesteban attempted to contact his supervisor to report the accident but was unable to reach him. It was not until the following day that he was first advised there was an accident form in the glove compartment of his vehicle that needed to be completed. Santiesteban indicated he realized the night of the accident he had been injured. He felt pain that night and the pain worsened the following day. When he reported the accident to his employer the following day, he indicated he was experiencing pain from the accident. Santiesteban described going to Harbor UCLA Hospital a few days after the accident and receiving treatment for his injuries. A few days later, an

4

attorney referred Santiesteban to a clinic for further treatment. In his deposition testimony, Santiesteban described the limitations that resulted from the injuries he suffered in the accident.

At trial, Andrea Moreno, American's general manager, identified Santiesteban from his social security number and address in his personnel file. Moreno handled accident reports for American. Santiesteban signed in for an August 12, 2009, monthly meeting during which accident reports were discussed. Santiesteban never notified Moreno about the accident or his injuries during his employment.

Greg Bausch was in charge of American's general operations and was Santiesteban's direct supervisor. American had a written vehicle policy, which Santiesteban signed on April 21, 2009. The policy included the procedures for accidents. Under accident procedures, employees were required to call in from the accident site and to fill out the accident report form in the glove compartment. Accident report forms were kept in the vehicles at all times. Employees were shown how to fill out the reports. Bausch taught the class on how to fill out accident reports on August 12, 2009, and Santiesteban was present at the class. According to Bausch, Santiesteban never reported the accident.

Paul Craig was American's fleet manager and managed the trucks. Santiesteban always drove the same vehicle. Employees were required to call Craig if an accident occurred and return the vehicle. Santiesteban never contacted Craig about the accident.

Cindy Ziemke was American's president and oversaw its daily operations. Santiesteban did not inform Ziemke about the accident or his injuries. She first learned of the accident through a January 28, 2010, letter from Santiesteban's attorney. Ziemke identified Santiesteban's signature on his workers' compensation claim, on a medical treatment for work-related injury form, on his employment application, on his Workers' Compensation Board fee disclosure statement, on his choice

5

of treating physician form, and on a notice of dual employment filed with the Structural Pest Control Board. American did not authorize dual employment.

Santiesteban's vehicle was equipped with a "Teletrac" global positioning device at all times. Katie Witman, Teletrac's Director of Customer Implementation, testified Telectrac tracks vehicles through cell towers. A report of Santiesteban's vehicle's movements and locations was generated for the period from September 30, 2009, through October 2, 2009. At 3:00 a.m. on October 2, 2009, Santiesteban's vehicle was on the 101 Freeway traveling at 44 miles per hour. At 3:05 a.m., Santiesteban's vehicle was traveling to 5851 Sunset Boulevard. The vehicle spent about 10 minutes on the 101 Freeway and was never at the 110/101 Freeway interchange. A vehicle stopped for 20 to 25 minutes would have been noted on the Teletrac report.

Edward Messinger, an insurance fraud investigator for the Orange County District Attorney's office, was assigned to Santiesteban's case. Messinger verified Santiesteban's identity and matched it to the records involving his claim. Messinger also matched Santiesteban's medical records from UCLA to his medical history. The records contained no mention of the October 1, 2009, accident or back pain. The records reflected no doctor visit during September and October 2009.

Heidi Hubbard, a senior claims examiner for Athens Administrators, the third-party claims administrator for Santiesteban's workers' compensation claim, testified that Athens had incurred $31,793.80 to investigate the claim.

Santiesteban called an "examiner of questioned documents" who testified that without looking at the original document, he could not tell if a signature was valid. It could be and pasted on to a document.

Craig Holiday was the attorney who appeared for an individual identified as "Victor Santiesteban" at the deposition taken by the defense. Holiday could not say if the person in court identified as Santiesteban was the same person as the individual at the deposition.

6

DISCUSSION

A review of the record pursuant to *Wende*, *supra*, 25 Cal.3d 436, and *Anders*, *supra*, 386 U.S. 738, including the possible issues raised by appellate counsel, has disclosed no reasonably arguable appellate issue. Santiesteban and the Attorney General agree the court intended to impose a sentence on both counts. On its own motion, an appellate court with jurisdiction of a case may order correction of clerical errors contained in the abstract of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 186-187.) The oral pronouncement of judgment supersedes the minute order. (*People v. Mesa* (1975) 14 Cal.3d 466, 471.)

DISPOSITION

The case is remanded to the trial court with directions to amend the sentencing minute order to reflect the jail sentence was imposed on both counts. The clerk of the superior court shall then forward the amended abstract of judgment to the appropriate authorities. In all other respects, the judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


FYBEL, J.

7